UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

SURETY CORPORATION OF AMERICA                      CIVIL ACTION

VERSUS                                             NO. 10-3151

LEON CANNIZZARO, ET AL                             SECTION "B"(1)

                           ORDER AND REASONS

   Before the Court is Defendants', District Attorney Leon Cannizzaro, First Assistant District Attorney Graymond Martin, and Assistant District Attorney Michael Redmann, Motion to Dismiss or Alternatively to Abstain (Rec. Doc. No. 13), Defendant Civil District Court Clerk of Court Dale N. Atkins's (collectively, "Defendants") Motion to Dismiss or Alternatively to Abstain (Rec. Doc. No. 14), Plaintiff Surety Corporation of America's ("SCA") Opposition (Rec. Doc. No. 15), Defendants' Reply Memorandum (Rec. Doc. No. 18), and SCA's Surreply Brief (Rec. Doc. No. 21).

   For the following reasons, **IT IS ORDERED** that Defendants' Motions are **GRANTED.**

   At all relevant times herein, SCA was the national managing general agent for American Bankers Insurance Company ("ABIC"), an insurance company that acts as surety for bail bonds underwritten in Louisiana to secure the appearance of defendants in criminal matters. Rec. Doc. No. 15, at 2. SCA issues ABIC bail bonds through independent local agents in Orleans Parish. *Id.* SCA is obligated, pursuant to the Exclusive National General Agency Bail

                                   1

Bond Agreement entered into between SCA and ABIC on December 23, 1999, to indemnify ABIC from all expenses related to bond forfeitures, including judgments.  *Id.; see* Rec. Doc. No. 15-1, Exhibit A, at 8-9.  Additionally, SCA and ABIC entered into an Assignment Agreement on September 13, 2010, under which ABIC assigned to SCA all of its "right, title and interest in any legal claim for recovery of its funds garnished or obtained by the City of New Orleans, Parish of Orleans, State of Louisiana or any departments, agencies or officials thereof."  *Id.; see* Rec. Doc. No. 15-2, Exhibit B, at 1.

   On September 16, 2010, SCA filed the instant complaint against defendants District Attorney Leon Cannizzaro, First Assistant District Attorney Graymond Martin, Assistant District Attorney Michael Redmann, Criminal Sheriff Marlin Guzman, Civil District Court Clerk of Court Dale Atkins, and Judicial Administrator of the Criminal District Court Robert Kazik, all in their official capacities, claiming that 54 bond forfeiture judgments against ABIC were absolute and/or relative nullities, and such judgments were improperly enforced by the District Attorney's office from September 2009 to April 2010.  Rec. Doc. No. 1.  SCA sets forth numerous claims for relief, specifically seeking a declaration of nullity of the 54 underlying judgments; damages for an alleged violation of Procedural Due Process rights under the United States Constitution and the Louisiana Constitution; damages for an alleged

2

unlawful seizure of property under the color of law in violation of 42 U.S.C. § 1983; a declaration that Louisiana Code of Criminal Procedure Article 344 is unconstitutional as written and/or applied; damages for alleged wrongful garnishment of funds; damages for alleged unjust enrichment; and declaratory judgment that the collection of forfeiture fees as to the underlying judgments by the Judicial Administrator is a violation of due process under the United States and Louisiana Constitutions and/or that the Judicial Administrator is not entitled to such. *Id*.

Prior to the execution of the Assignment Agreement and the filing of SCA's federal complaint, ABIC instituted proceedings in the Civil District Court for the Parish of Orleans seeking to nullify a portion of those bond forfeiture judgments. Rec. Doc. No. 13-1, at 2; *see* Rec. Doc. No. 13-3, Exhibit 1. ABIC additionally filed a Petition for Injunctive Relief in the Civil District Court for the Parish of Orleans seeking to enjoin the enforcement of 24 of the underlying judgments. Rec. Doc. No. 13-1, at 2; *see* Rec. Doc. No. 13-4, Exhibit 2. These state court actions remain pending. Rec. Doc. No. 15, at 14.

Defendants contend that this Court lacks subject matter jurisdiction over this case pursuant to the *Rooker-Feldman* doctrine, as SCA seeks review of an adverse state court judgment, and federal district courts do not have jurisdiction to review, modify, or nullify judgments of state courts. Rec. Doc. No. 13-1,

at 7-12.  Alternatively, Defendants urge that this Court should abstain from exercising its jurisdiction under the *Colorado River* abstention doctrine in the interest of wise judicial administration.  *Id.* at 12-13.  Defendants further argue that SCA has not stated a claim for which relief can be granted, and finally that SCA has failed to join indispensable parties under Fed. R. Civ. P. 19.  *Id.* at 13-17.

SCA contends that the underlying bond forfeiture judgments are absolute nullities pursuant to the Louisiana Code of Civil Procedure article 2002, and an action to annul such judgments can be asserted at any time, in a collateral proceeding, and before any court.  Rec. Doc. No. 15, at 4-6.  SCA further provides that the *Rooker-Feldman* doctrine is inapplicable, as diversity jurisdiction as well as federal question issues exist in this case, SCA was never a party in the underlying state cases, and many of the underlying judgments obtained were absolute nullities.  *Id.* at 8-11.  SCA additionally maintains that abstention is not warranted here because its claims arise, *inter alia*, under 42 U.S.C. § 1983, which falls within the exception to the federal anti-injunction statute due to the importance of a party being able to litigate claims arising under color of state law in an independent federal forum.  *Id.* at 11-14.  SCA argues that it has also stated a claim for which relief can be granted, either as the assignee of ABIC's claims or as ABIC's indemnitor, because the true issue is whether

it has standing to assert the claims presented in its suit, which SCA maintains it does. *Id.* at 14-19. Finally, SCA provides that no additional parties must be joined under Rule 19 because (1) the State of Louisiana does not receive the money garnished pursuant to the bond forfeiture judgments in Orleans Parish and (2) neither the individual bailbondsmen nor ABIC are ultimately impacted by the judgments or nullification thereof. *Id.* at 19-20.

**A.**   ***Rooker-Feldman* Doctrine**

The *Rooker-Feldman* doctrine precludes federal district courts from exercising subject matter jurisdiction over collateral attacks on state court judgments, even if it is alleged that the state court's actions were unconstitutional. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Liedtke v. State Bar*, 18 F.3d 315 (5th Cir. 1994). A party may not circumvent this rule by bringing a § 1983 action which alleges that the state court decision caused a deprivation of rights protected by the Constitution. *See Howell v. Supreme Court*, 885 F.2d 308, 311 (5th Cir. 1989); *Hagerty v. Succession of Clement*, 749 F.2d 217, 220 (5th Cir. 1984). Indeed, "[a] federal complainant cannot circumvent this jurisdictional limitation by asserting claims not raised in the state court proceedings or claims framed as original claims for relief. If the district court is confronted with issues that are 'inextricably intertwined' with a state judgment, the court is 'in essence being called upon to

review the state-court decision,' and the originality of the district court's jurisdiction precludes such a review." *United States v. Shepard*, 23 F.3d 923, 924 (5th Cir. 1994) (quoting *Feldman*, 460 U.S. at 482, n.16). Constitutional questions arising in state proceedings must be resolved by the state courts, with recourse at the federal level available only through an application for writ of certiorari to the United States Supreme Court. *Liedtke*, 18 F.3d at 317.

The United States Supreme Court has found that the doctrine only applies in limited circumstances, in "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Court has recognized the general rule that the *Rooker-Feldman* doctrine is inapplicable when a federal plaintiff was not a party in the state court action, and recently held further that the doctrine "does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment." *Lance v. Dennis*, 546 U.S. 459, 466 (2006); *see Johnson v. DeGrandy*, 512 U.S. 997 (1994). The Court did not, however, foreclose on the possibility that limited circumstances may exist in which *Rooker-Feldman* may be applied against a party

not named in an earlier state proceeding, "*e.g.*, where an estate takes a *de facto* appeal in a district court of an earlier state decision involving the decedent." *Lance*, 546 U.S. at 466, n.2. While this Court acknowledges that the relationship of the present federal and state litigants may fall within the limited circumstances contemplated by the United States Supreme Court, we need not reach this conclusion at this time as we find that principles of abstention warrant dismissal of the action.

**B.   Abstention**

While jurisdiction may indeed exist here, we find that the principles of *Younger* abstention and the involvement of vital state interests here require dismissal. *See Younger v. Harris*, 401 U.S. 37 (1971). "Although *Younger* abstention originally applied only to criminal prosecutions...it also applies 'when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government.'" *Health Net, Inc. v. Wooley*, 534 F.3d 487, 494 (5th Cir. 2008) (citing *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 10-11 (1987)). Indeed,

> The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved. The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to

> proceedings criminal in nature.... Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. Where vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims.....
>
> The question in this case is threefold: first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges.

*Old Republic Union Ins. Co. v. Tillis Trucking Co., Inc.*, 124 F.3d 1258, 1261 (11th Cir. 1997) (citing *Middlesex County Ethics Comm. V. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (citations and internal quotation marks omitted)).

In *Health Net, Inc. v. Wooley*, *supra*, the United States Fifth Circuit Court of Appeals held that *Younger* abstention mandated the district court's dismissal of a suit filed in federal court to block the enforcement of prior state court judgments on the grounds that such judgments were null. 534 F.3d at 490, 494-497. After receiving adverse verdicts in state trial court, Health Net appealed the verdicts and awards to the Louisiana Court of Appeal, and sought an injunction in both federal district court and the state trial court declaring the verdicts a nullity under Louisiana Civil Code of Procedure article 2004, claiming the judgments were obtained by fraud or ill practices. *Id.* at 491. The district

court dismissed the action for lack of jurisdiction; however, the United States Fifth Circuit Court of Appeals found that the district court should have recognized that it had jurisdiction, but should have abstained from exercising that jurisdiction in part under the principles set forth in *Younger*. *Id.* at 497.

The Fifth Circuit recognized that Health Net's complaint alleged a § 1983 claim, which implicated Louisiana's post-judgment proceedings, "namely, the appellate process and the trial court's authority to annul a judgment obtained through fraud or ill practices." *Id.* at 494-95. The court found that Health Net's claims implicated important state interests similar to those stated by the United States Supreme Court in *Pennzoil, supra*, which provided "[s]tates have important interests in administering certain aspects of their judicial systems, [including] enforcing the orders and judgments of their courts." *Id.* (citing *Pennzoil*, 481 U.S. at 12-13).

The court additionally reasoned that *Younger* abstention allows federal courts to avoid interpreting state laws that would result in the "unwarranted determination of federal constitutional questions," particularly where the state provides a forum for the claim and may be able to resolve the issue on state law grounds. *Id.* at 495 (citing *Pennzoil*, 481 U.S. at 11). The court again referenced the *Pennzoil* Court's conclusion and reasoning that "[the

state] ought to have the opportunity to resolve any federal questions implicated by its post-judgment proceedings; thus, 'so long as those challenges relate to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand.'" *Id.* (citing *Pennzoil*, 481 U.S. at 14). The Fifth Circuit concluded that Health Net's claim implicated the constitutionality of state regulations, a challenge for which Louisiana offered a forum, and because the state should have the chance to interpret its laws and "because the federal courts should not interfere with the important interest Louisiana has in effecting its system of reviewing judgments, on appeal and through nullity actions," the principles of *Younger* required abstention. *Id.* at 495-97.

In the case at bar, SCA seeks a declaration that the underlying state bond forfeiture judgments are nullities and challenges the enforcement of these judgments as well as the constitutionality of Louisiana's bond forfeiture scheme. As set forth above, Louisiana not only has an important interest in the enforcement of its orders and judgments, but also in the administration of its system regarding bond forfeiture. *See also International Fidelity Ins. Co. v. City of New York*, 263 F.Supp.2d 619, 633 (E.D.N.Y. 2003) (stating that a challenge to the

constitutionality of New York's bond forfeiture scheme appears to implicate an important state interest).  Moreover, as actions for nullity of a portion of these judgments and for injunctive relief against enforcement of some of these judgments are currently pending in Louisiana state court, not only should Louisiana have the opportunity to interpret its own regulations and review its own judgments, but SCA also has an avenue open and an adequate opportunity for review of its constitutional claims in the state proceedings.  Accordingly, we conclude that the principles of *Younger* similarly warrant abstention in this case, and Defendants' motions (Rec. Doc. Nos. 13, 14) are hereby **GRANTED.**

New Orleans, Louisiana, this 13th day of May, 2011.

_____
United States District Judge